[54 NE3d 61, 34 NYS3d 389]

SUSAN LARABEE et al., Appellants, v GOVERNOR OF THE STATE OF NEW YORK et al., Respondents.

ARLENE R. SILVERMAN, Acting Justice, New York State Supreme Court, Appellant, v SHELDON SILVER, as Speaker of the New York State Assembly, et al., Respondents.

Argued March 23, 2016; decided May 10, 2016

*Cohen & Gresser LLP*, New York City (*Thomas E. Bezanson, Alexandra Wald* and *Matthew V. Povolny* of counsel), and *George Bundy Smith, Senior & Associates, P.C.*, New York City (*George Bundy Smith, Sr.*, of counsel), for appellants in the first above-entitled action.

*Arlene R. Silverman*, New York City, appellant pro se in the second above-entitled action.

*Eric T. Schneiderman, Attorney General*, New York City (*Anisha S. Dasgupta, Mark H. Shawhan* and *Barbara D. Underwood* of counsel), for respondents in the first and second above-entitled actions.

*Stroock & Stroock & Lavan LLP*, New York City (*Joseph L. Forstadt, Alan M. Klinger, Ernst H. Rosenberger, Burton N. Lipshie, Dina Kolker* and *Lee M. Leviter* of counsel), for Association of Justices of the Supreme Court of the State of New York and others, amici curiae.

**OPINION OF THE COURT**

Per Curiam.

In three consolidated appeals in *Matter of Maron v Silver* (14 NY3d 230 [2010]), we addressed the legislature's and the

Governor's practice of directly and explicitly tying consideration of judicial compensation to unrelated policy initiatives during the years 2006, 2007 and 2008 (*see id.* at 245, 257). We concluded that this practice, called linkage, violated the separation of powers doctrine by undermining judicial independence, and we issued a declaration to that effect (*see id.* at 260-261). In response to our decision in *Matter of Maron*, the legislature passed, and the Governor signed, legislation establishing an independent Commission on Judicial Compensation, which was empowered to recommend prospective judicial compensation increases at four-year intervals after the effective date of the legislation (*see* L 2010, ch 567). Under this new law, when the Commission recommends an increase in judicial salaries, the increase goes into effect by operation of law on April 1 of the year for which it is recommended, unless the legislature passes a statute rejecting the recommended pay raise (*see id.*). It is undisputed that, through this legislatively-created process, the issue of judicial compensation now receives consideration independent of other political matters. Nonetheless, plaintiffs in the instant consolidated appeals assert that the legislature's and the Governor's creation of the Commission was inadequate to remedy the constitutional violation that led to our decision in *Matter of Maron*, and hence plaintiffs ask us to award them money damages. This we decline to do.

Plaintiffs here are current and retired judges and justices of the New York court system who served without any increase in their compensation during the period in which the political branches of government engaged in the practice of linkage. Plaintiffs were also parties to the consolidated cases decided in *Matter of Maron*. They seek an award of money damages in the amount of the pay raises that they believe they would have received had the legislature and the Governor not linked consideration of such raises to unrelated policy matters, asserting that those damages are necessary to fully remedy the constitutional violation identified in *Matter of Maron*. More specifically, plaintiffs argue that the political branches' violation of the separation of powers doctrine via linkage caused plaintiffs economic injury which was not adequately remedied by the establishment of the Commission because the enabling legislation for the Commission authorizes only prospective raises, and therefore the Commission cannot provide the judges with the increased compensation which has already been unconstitutionally denied them during the years of linkage.

However, plaintiffs' bid for damages must fail because it rests on the false premise that, in *Matter of Maron*, we concluded that the political branches' practice of linkage deprived state judges of raises to which they were constitutionally entitled. In that case, we simply decided that the State had unconstitutionally compromised the independence of the judiciary over the course of three years by linking any decision on whether to increase judges' salaries with other legislative initiatives such as the enactment of legislative pay increases and campaign finance reform (*see Matter of Maron*, 14 NY3d at 245-246, 260-261). Thus, we "h[e]ld that under these circumstances, as a matter of law, the State defendants' failure to consider judicial compensation on the merits violate[d] the Separation of Powers Doctrine" (*id.* at 261).

Importantly, in concluding that linkage was unconstitutional, we refused to rule that the State also violated the separation of powers doctrine by refusing to increase judicial salaries during the years in which it had engaged in the practice of linkage. Indeed, although the plaintiffs in *Chief Judge of the State of N.Y. v Governor of the State of N.Y.*, which was one of the consolidated appeals before us in *Matter of Maron*, argued that the State had violated the separation of powers doctrine by keeping judicial compensation at such a low level in the linkage years (*see id.* at 261-262), we did not declare the State's failure to raise judicial pay in the linkage period to be a violation of the separation of powers doctrine. Instead, we determined that the plaintiffs' argument in that respect was "best addressed in the first instance by the Legislature" (*id.* at 262). Accordingly, in *Matter of Maron*, we declined to hold that the State had violated the separation of powers doctrine by refusing to increase judicial pay during the years where linkage had occurred, and hence plaintiffs here cannot obtain retroactive monetary relief as compensation for the State's failure to grant them raises to which they were not constitutionally entitled.

Consistent with our conclusion that the State's decision-making process regarding judicial compensation, as opposed to the ultimate decision itself, violated the State Constitution, we recognized in *Matter of Maron* that damages were not an appropriate cure for the State's unlawful deliberative approach. So it was that, in two of the consolidated cases in *Matter of*

*Maron,* we ordered only declaratory relief,[1] and we modified the Appellate Division's orders, which had directed the State to calculate and grant a cost-of-living increase in judicial compensation (*see Chief Judge of State of N.Y. v Governor of State of N.Y.*, 25 Misc 3d 268, 273 [Sup Ct, NY County 2009], *affd* 65 AD3d 898 [1st Dept 2009]; *Larabee v Governor of State of N.Y.*, 65 AD3d 74, 100 [1st Dept 2009]), by effectively replacing those orders of monetary relief with judgments declaring that linkage was unconstitutional (*see Matter of Maron,* 14 NY3d at 261, 263-264). In pronouncing this remedy, we suggested that money damages would be an inappropriate form of relief from the State's unconstitutional linkage practice because any mandate that the State pay money damages would, as a practical matter, be tantamount to a directive to increase judicial compensation in a manner that would arrogate the legislative branch's budgetary powers to the judiciary. Thus, we observed that, in fashioning a remedy, "deference to the Legislature—which possesses the constitutional authority to budget and appropriate—is necessary" (*id.* at 261) and that "whether judicial compensation should be adjusted, and by how much, is within the province of the Legislature" (*id.* at 263).

Nonetheless, here, plaintiffs argue that the State owes them retroactive money damages because the State has allegedly failed to act consistently with our statement in *Matter of Maron* that we "expect appropriate and expeditious legislative consideration" of judicial compensation (*Matter of Maron,* 14 NY3d at 263). Plaintiffs seem to suggest that, once we held that the legislature failed to properly consider whether to increase judicial pay during the linkage years, the only appropriate consideration the legislature could give to the issue was a decision to retroactively raise judicial compensation.

---

**1.** More precisely, in one of the consolidated cases, *Matter of Maron,* we reinstated the plaintiffs' cause of action based on the State's violation of the separation of powers doctrine, and in the two other cases, we granted declaratory relief, saying:

"As that case [*Matter of Maron*] is here before us on a CPLR 3211 motion to dismiss, *our corrective action* is limited to a reinstatement of that cause of action. In *Larabee* and *Chief Judge,* the procedural posture of the cases is not so limiting and we may now issue a *declaration.* We hold that under these circumstances, as a matter of law, the State defendants' failure to consider judicial compensation on the merits violates the Separation of Powers Doctrine." (*Matter of Maron,* 14 NY3d at 261 [emphases added].)

But, we never said as much in *Matter of Maron*, and in fact we suggested that a court order mandating retroactive raises would be unlawful. Thus, we expected appropriate consideration of judicial compensation in the form of a linkage-free evaluation of the issue, not in the form of automatic payment of retroactive raises.[2]

Finally, plaintiffs claim that generally violations of the separation of powers doctrine must be remedied by an award of money damages and that therefore the State's previous disregard of separation of powers principles via linkage requires the State to pay damages to plaintiffs. But, not every governmental actor's breach of the separation of powers doctrine automatically compels the wrongdoer to pay damages. Even assuming that the articles of the State Constitution that establish the separation of powers doctrine are self-executing provisions that can sometimes support an individual claim for money damages (*see* 62 NY Jur 2d, Government Tort Liability § 28), the State's particular violation of the doctrine here did not meet the remaining typical prerequisites for a damages award, such as the requirements that alternative remedies are inadequate to remedy the harm, that monetary relief is needed to deter future constitutional violations and that a monetary remedy has been historically recognized at common law (*see Martinez v City of Schenectady*, 97 NY2d 78, 83-84 [2001]; *Brown v State of New York*, 89 NY2d 172, 189-192 [1996];

---

**2.** Plaintiffs note that, in *Matter of Maron*, we said that the legislature, in considering judicial compensation, should "keep in mind, however, that whether the Legislature has met its constitutional obligations in that regard is within the province of this Court" (*id.* at 263). Plaintiffs claim that, by this statement, we offered the State an opportunity to voluntarily grant retroactive pay raises to judges and signaled that, if the State did not provide such raises, we would return this matter to our "province" by ordering damages. But, in the aforementioned statement, we did not suggest that state judges have a judicially enforceable constitutional right to retroactive compensation increases, which must be supplied either by the voluntary action of the State or by a court order. Rather, in the referenced statement, we simply observed that we retain the continuing power to review the State's handling of judicial compensation for compliance with the separation of powers doctrine. Had we believed that the State had to compensate judges for the lack of pay increases during the years of linkage or else pay damages, we would have ordered the State to satisfy its alleged constitutional obligation to grant retroactive pay increases by paying damages to the plaintiffs in *Matter of Maron*, and we would not have given the State extra time to decide whether or not to provide the backpay that was, according to plaintiffs, owed to them under the Constitution. Of course, the legislature was free to provide for retroactive pay increases, but our decision in that case did not mandate such action.

Restatement [Second] of Torts § 874A). Certainly, a grant of money damages is unnecessary to deter future constitutional violations of the kind at issue in this case because the legislature's establishment of the Commission on Judicial Compensation will ensure routine independent consideration of judicial compensation on the merits going forward, thereby preventing any unconstitutional linkage in the future. And, aside from advancing the untenable notion that the State's past practice of linkage directly caused them to lose pay increases which they inevitably would have received and must now be paid by the State, plaintiffs do not contend that the State's creation of the Commission in response to *Matter of Maron* was either inadequate to remedy the structural harm caused by linkage or noncompliant with our declaration in that case. Thus, regardless of whether damages are a necessary or historically-recognized remedy for other transgressions against the separation of powers doctrine, the particular constitutional violation at issue here does not warrant an award of damages.

In sum, neither *Matter of Maron* nor any other authority permits us to grant monetary relief to plaintiffs here. Accordingly, in both cases before us, the orders of the Appellate Division should be affirmed, without costs.

Judges PIGOTT, RIVERA, ABDUS-SALAAM, FAHEY and GARCIA concur; Chief Judge DiFIORE and Judge STEIN taking no part.

In each case: Order affirmed, without costs.